ACCEPTED
03-14-00802-CR
6026008
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/10/2015 5:01:01 PM
JEFFREY D. KYLE
CLERK

# CASE NUMBER 03-14-00802-CR

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/10/2015 5:01:01 PM
JEFFREY D. KYLE
Clerk

**PEDRO ELIZONDO MARTINEZ, JR.**

Appellant

VS.

**THE STATE OF TEXAS**

COURT OF APPEALS

**THIRD DISTRICT OF TEXAS**

AUSTIN, TEXAS

## On appeal from the 26th Judicial District Court

Williamson County, Texas

Cause Number 13-1936-K26

# APPELLANT'S BRIEF

**Oral argument is not requested**

unless requested by the State or this Court

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.      Austin, Texas 78701
*ph* (512) 921-8247    *fax* (512) 451-5882
*email* ellic@sahuallalaw.com

# IDENTITY OF PARTIES & COUNSEL

## Trial Parties

**THE STATE OF TEXAS**

**MR. PEDRO ELIZONDO MARTINEZ, JR.**
Defendant

## Trial Counsel

**MR. GEOFFREY PURYEAR**
Counsel for the State
State Bar Number 24054396

405 Martin Luther King, Box 1
Georgetown, Texas 78626
*ph* (512) 943-1234   *fax* (512) 943-1255
*email* gpuryear@wilco.org

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.        Austin, Texas 78701
*ph* (512) 921-8247     *fax* (512) 451-5882
*email* ellic@sahuallalaw.com

## Appellate Parties

**MR. PEDRO ELIZONDO MARTINEZ, JR.THE STATE OF TEXAS**
Appellant

## Appellate Counsel

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.        Austin, Texas 78701
*ph* (512) 921-8247     *fax* (512) 451-5882
*email* ellic@sahuallalaw.com

**THE HONORABLE JANA DUTY**
Counsel for the State
State Bar Number 24000244

405 Martin Luther King, Box 1
Georgetown, Texas 78626
*ph* (512) 943-1234   *fax* (512) 943-1255
*email* jprezas@wilco.org

# TABLE OF CONTENTS

**Index of Authorities**................................................................3

    Cases .........................................................................3

    Statutes & Rules.............................................................3

**Statement of the Case**..........................................................4

**Statement Regarding Oral Argument**...................................5

**Issues Presented**..................................................................6

**Statement of Facts**..............................................................7

**Summary of the Argument** ................................................. 11

**Argument**......................................................................... 12

    Issue One—Legal Sufficiency of Deadly Weapon Finding........................ 12

        a.  Legal Sufficiency ...................................... 12

        b.  Vehicles as Deadly Weapons............................. 12

        c.  Reckless Driving........................................ 13

        d.  Capability of Causing Death or Serious Bodily Injury.................. 16

        e.  Remedy............................................... 17

    Issue Two—Injured Constable Testimony ................................. 18

        a.  Preservation of Evidentiary Error...................... 18

        b.  Relevance.............................................. 18

        c.  Prejudice.............................................. 19

        d.  Review of Evidentiary Error........................... 20

        e.  Harm Analysis ......................................... 21

        f.  Remedy ............................................... 22

**Prayer**............................................................................ 23

**Certificate of Compliance** ................................................ 24

**Certificate of Service** ...................................................... 25

# INDEX OF AUTHORITIES

## Cases

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ........................................ 12

*Cates v. State*, 102 S.W.3d 735 (Tex. Crim. App. 2003) .................................... 14–16

*Drichas v. State*, 175 S.W.3d 795 (Tex. Crim. App. 2005) ........................... 13–17, 19

*Foley v. State*, 327 S.W.3d 907 (Tex. App.—Corpus Christi 2010, no pet.) .... 16, 17

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ........................................ 14

*Jackson v. Virginia*, 443 U.S. 307 (1979) ............................................................... 12, 15

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998) ................................. 21, 22

*Mann v. State*, 13 S.W.3d 89 (Tex. App.—Austin 2000, pet. granted) ...... 13–16, 19

*Mann v. State*, 58 S.W.3d 132 (2001) ................................................... 13–16, 19

*Martinez v. State,* 327 S.W.3d 727 (Tex. Crim. App. 2010) .................................... 20

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) .......................... 18, 19

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002) ........................................ 21

*Plummer v. State*, 410 S.W.3d 855 (Tex. Crim. App. 2013) .................................... 17

*Pointe v. State*, 371 S.W.3d 527 (Tex. App.—Beaumont 2012, no pet.) .......... 14, 15

*Powell v. State*, 189 S.W.3d 285 (Tex. Crim. App. 2006) ........................................ 19

*Sandoval v. State*, 409 S.W.3d 259 (Tex. App.—Austin 2013, no pet.) ................. 20

*Sierra v. State*, 280 S.W.3d 250 (Tex. Crim. App. 2009) ............................. 12–17, 19

*Temple v. State*, 390 S.W.3d 341 (Tex. Crim. App. 2013) ...................................... 12

*Tyra v. State*, 897 S.W.2d 796 (Tex. Crim. App. 1995) ............................... 13, 15, 16

*Williams v. State*, 958 S.W.2d 186 (Tex. Crim. App. 1997) ................................... 19


## Statutes & Rules

TEX. PEN. CODE ANN. § 1.07 (a)(17)(B) (West 2011) ...................................... 12

TEX. R. APP. PROC. 33.1 (a) ............................................................................ 18

TEX. R. APP. PROC. 44.2 (b) ........................................................................... 21

TEX. R. EVID. 401 ........................................................................................... 18

TEX. R. EVID. 403 ........................................................................................... 19

# STATEMENT OF THE CASE

The appellant, Pedro Elizondo Martinez, Jr. ("Martinez"), proceeded to trial on an indictment for driving while intoxicated third or more on November 17, 2014. 2 R.R. at 4. The indictment also alleged that Martinez used a motor vehicle as a deadly weapon during the commission of the offense. 3 R.R. at 7. On November 19, 2014, the jury convicted Martinez and found the deadly weapon allegation true. 3 R.R. at 181. Following the punishment phase of trial the next day, which included proof of multiple prior felony DWI convictions that had resulted in a single prior "pen trip" (enhancing punishment to that of a second degree felony), the jury sentenced Martinez to 17 years of incarceration with no fine. 4 R.R. at 82. That conviction is the basis of this appeal.

# S TATEMENT R EGARDING O RAL A RGUMENT

The appellant is not requesting oral argument because the issues presented in this appeal are not novel and the record is straightforward. However, if the State requests oral argument or this court believes it would help resolve this matter, the appellant would like an opportunity to appear and argue.

# ISSUES PRESENTED

Martinez presents two issues on appeal:

## Issue One  Deadly Weapon Finding

Was the evidence legally sufficient to support a deadly weapon finding?

## Issue Two  Injured Constable Testimony

Did the trial court abuse its discretion by permitting testimony about an injured constable over Martinez's objections to relevance and prejudice, and did that cause harm affecting Martinez's substantial rights?

# STATEMENT OF FACTS

The indictment in this case charged Martinez with driving while intoxicated third or more and the use of a vehicle as a deadly weapon during the offense. 3 R.R. at 7. At trial, the evidence relevant to this appeal showed that a Rodolfo Pena, a Williamson County Sheriff's Deputy, was dispatched to an accident along a stretch of North Interstate 35 for a welfare check. 3 R.R. 23. He did not witness the accident, and noted only that Martinez's vehicle had apparently collided with the retaining wall. 3 R.R. at 24–26. Pena also testified that traffic "was light" that night. 3 R.R. at 28. His contact with the scene was brief, and Pena ultimately referred the investigation to arriving Georgetown Police Department officers and left for another call. 3 R.R. at 25.

Those responding officers—John Cochran and his field training officer, David McDonald—did not observe the accident either, of course. 3 R.R. 32–33 & 56. Cochran soon determined that the accident had occurred after Martinez hydroplaned, causing him to strike the retaining wall. 3 R.R. at 34 & 58. The truck suffered moderate frontend damage, but Mr. Martinez was uninjured. 3 R.R. at 39–40. After noting some signs of intoxication, he asked Martinez to perform the standard field sobriety tests, which Martinez refused. 3 R.R. at 42–45. No breath or blood test was ever obtained, either. 3 R.R. at 94.

As for the traffic on the roadway and the danger posed by Martinez's accident, Cochran testified only that motor vehicles "can cause serious bodily injuries . . . and fatalities." 3 R.R. 50. However, having arrived some time after

the accident, Cochran testified generally and hypothetically that there were other cars on the roadway "that evening" and "on a Wednesday evening around 9:30" it was "common for families to be out on the road." 3 R.R. at 51. He made no reference to the cause of the accident, the conditions on the roadway, or any actual people who may have been endangered; instead, his conclusion was based on the fact that the defendant was involved in an accident and that his vehicle was theoretically "capable of causing a collision with another vehicle." *Id.*

As the lead investigator, the person who completed the accident report, and someone who had experienced hydroplaning as a driver, Cochran did testify that the accident in this case—hydroplaning—was not caused by something Martinez did, but by the loss of tire grip in the wet conditions. 3 R.R. at 59. His accident report stated that the cause of the accident was that Martinez's vehicle had left its lane. 3 R.R. at 60. (It did, however, list use of alcohol and failure to control speed as "possible contributing factors." 3 R.R. at 89–90.)

Only two pieces of evidence addressed the accident as it happened. The first came in the form of hearsay about another officer named Morris who was apparently attending to another call across the freeway. He saw the accident happen and reported simply "there's been a motor vehicle accident and this is where it is" to dispatch. 3 R.R. at 57. The other direct account came from Martinez himself. State's Exhibit 7 included video from the backseat of Cochran's vehicle, where Martinez was heard rhetorically asking what he could have done after he began hydroplaning, answering "I couldn't step on the brake."

Cochran conceded that Martinez's reaction was the proper one during a hydroplane. 3 R.R. at 102.

Cochran's field training officer, David McDonald, added nothing about the accident except for an unrelated anecdote that was objected to by defense counsel. The exchange went as follows:

> [McDonald]: I've worked—actually been on scene a couple of times. A constable working overtime one morning was hit in the rear—
>
> [Defense]: Objection, Your Honor, relevance and more prejudicial than probative.
>
> [State]: Your Honor, it's going to the fact that we have alleged a deadly weapon in this offense, and it goes to the fact that a motor vehicle is capable of causing serious bodily injury or death.
>
> [Defense]: Once again, as we explored with the other officer, Judge, we need to talk about this case, not what has happened in any other case. That's not relevant and the danger of undue prejudice is too great to go into other cases that may have happened.
>
> [State]: If I may, Your Honor. The vehicle was stopped on a lane of traffic, and if this officer does have information—
>
> [Court]: Overruled. Move on.
>
> [State]: Thank you, Your Honor.
>
> [Court]: You may answer the question.
>
> [McDonald]: I believe it was in 2012. We worked an accident on I-35 about a mile up from where this accident occurred. A deputy constable was working an overtime gig providing traffic control for a construction site, and he was hit in the rear as he was parked with his emergency lights activated by what was determined to be an intoxicated driver and he was seriously injured and sent to the hospital.

3 R.R. at 119–20.

After the conclusion of McDonald's testimony, the state rested its case in chief, and defense counsel moved for a directed verdict on the deadly weapon issue. 3 R.R. at 128. Counsel provided the court with supporting case law and argued that the state had not "presented even a scintilla of evidence that show[ed] how the defendant operated his vehicle at the time of the offense." *Id.* The crux of the defendant's position was that although a vehicle as such could always theoretically be a deadly weapon, in the defendant's case the only evidence of the defendant's driving was that the accident had not been his fault and that he had reacted prudently upon hydroplaning, and there was no evidence that anyone was present and actually in any danger whatsoever. 3 R.R. at 129; *id.* at 132–33. The state responded that "that the way the vehicle was driven . . . hydroplaning after ingesting amounts of alcohol, the level of traffic . . ., the time of day [and] day of the week" supported a deadly weapon finding. 3 R.R. at 131. The court denied the motion for directed verdict. 3 R.R. at 134.

Both sides then rested and closed and the case was submitted to the jury. 3 R.R. at 136. The court's charge included the statutory definition of "deadly weapon" and a fairly standard instruction requiring the jury to determine beyond a reasonable doubt whether the defendant's vehicle had been used as one during the offense. 3 R.R. at 141–43. After arguments and deliberation, the jury returned a verdict of guilty and an affirmative deadly weapon finding. 3 R.R. at 180–81.

Following evidence and deliberations in the punishment phase of trial, the jury assessed punishment at 17 years of incarceration with no fine. 4 R.R. at 82.

# SUMMARY OF THE ARGUMENT

The arguments raised by this appeal cover two issues: the legal sufficiency of the deadly weapon finding and the admission of McDonald's testimony about the injured constable.

The evidence was legally insufficient to support a deadly weapon finding because there is, at most, a mere modicum of evidence that supports the two sub-issues required for a deadly weapon finding in a case of this variety. As to the first, there was scant evidence that the defendant drove in a reckless manner; he was not grossly intoxicated, broke no traffic laws, was not at-fault for the single-car accident he was involved in, and reacted correctly to the hazardous situation as it developed. And as to the second, nothing was introduced that demonstrated that Martinez's vehicle was capable of causing death or serious bodily injury; there was no evidence at all of any other person actually endangered by the accident beyond pure speculation. The insufficiency of this evidence warrants deletion of the deadly weapon finding from the judgment.

McDonald's testimony, which was timely and specifically objected to, was not relevant, and based on the appropriate balancing test, any probative value it had was substantially outweighed by the danger of unfair prejudice. After performing a harm analysis, there can be no fair assurance that the disputed testimony had no or only slight effect on the jury's decisions, and thus, on defendant's substantial rights. That warrants reversal and remand for a new trial.

# ARGUMENT

## Issue One  Legal Sufficiency of Deadly Weapon Finding

The evidence was legally insufficient to support a deadly weapon finding

### a. Legal Sufficiency

Legal sufficiency is tested by deciding whether—viewing the evidence in the light most favorable to the verdict—any rational jury could have found the issue true beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010) (applying standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979)). The "most favorable to the verdict" language means that sufficiency review must defer to the jury's determinations of weight and credibility and resolve any conflicting evidence in favor of the verdict. *Jackson*, 443 U.S. at 318–19; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 912. However, there must still be enough evidence to permit a rational jury to find the issue beyond a reasonable doubt, so a mere modicum of probative evidence is still insufficient. *Jackson*, 443 U.S. at 320.

### b. Vehicles as Deadly Weapons

A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN. CODE ANN. § 1.07 (a)(17)(B) (West 2011). A motor vehicle can be a deadly weapon in a felony DWI case if the manner in which it was actually used was capable of causing death or serious bodily injury. *Sierra v. State*, 280 S.W.3d 250,

254–55 (Tex. Crim. App. 2009); *Mann v. State*, 58 S.W.3d 132, 132 (2001) (adopting *Mann v. State*, 13 S.W.3d 89, 91–92 (Tex. App.—Austin 2000)). That involves a two-part analysis: the manner of the vehicle's use, and whether that it made capable of causing death or serious bodily injury. *Sierra*, 280 S.W.3d at 255.

### c. Reckless Driving

Although there is no specific benchmark for assessing driving in this context, the principal issue is generally "whether a defendant's driving was reckless or dangerous during the commission of a felony." *Id.* at 255. Other factors may include violation of traffic laws and fault for any collision. *Id.* at 256.

In *Sierra*, the defendant's driving was reckless because the defendant was speeding and made no effort to brake in a situation where an unimpaired driver would have, causing an accident. *Id.* In *Tyra*, the defendant's driving was reckless because the defendant was "too drunk to control the vehicle." *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995). In *Mann*, the defendant's driving was reckless because the defendant was incredibly intoxicated and crossed over into opposing traffic, avoiding an accident only because an oncoming vehicle successfully "took evasive action." *Mann*, 13 S.W.3d at 92. In *Drichas*, the defendant's driving was reckless because the defendant almost struck a police officer then sped and ran stop signs, ultimately leading police from multiple agencies on a fifteen minute high speed chase in which the vehicle was frequently out of control and culminating in a "bailout" that sent the driverless truck into

a parked van, which it pushed into a mobile home. *Drichas v. State*, 175 S.W.3d 795, 797–98 (Tex. Crim. App. 2005).

It is worth noting that while some of these cases point to intoxication as a factor indicating reckless driving, in each, the level of intoxication was great and directly caused dangerous driving. As noted in an opinion concurring with *Mann*, intoxication, "in and of itself, should not be enough to authorize a finding of the use of a deadly weapon." *Mann*, 58 S.W.3d at 133 (Johnson, J., concurring, joined by Price and Cochran, JJ.). The *Sierra* court prominently pointed to that rationale and a lower court's rejection of the argument that the "single factor of intoxication [was] 'the most dangerous and reckless of them all,'" while admittedly declining to settle the issue. *Sierra*, 280 S.W.3d at 256.

By contrast, in *Cates*, the defendant's driving was not reckless because the evidence showed only that the defendant *may* have been speeding but properly stopped at a traffic light. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). And in *Pointe*, the defendant's driving was not reckless because although another driver testified to not seeing the defendant before a collision, that was not enough to support the conclusion that the defendant was speeding or did not have headlights on. *Pointe v. State*, 371 S.W.3d 527, 532 (Tex. App.—Beaumont 2012, no pet.). That is, "while a jury may draw multiple reasonable inferences from the evidence, it cannot draw conclusions based on speculation." *Id.* (citing *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007)).

In this case, there was little evidence of Martinez's driving. He consumed a few beers at some time that evening and hydroplaned while driving later, which led to a single-vehicle accident. There was also the non-expert opinion of Officer Cochran (who did not see the accident or perform an accident reconstruction) that intoxication or failure to control speed *may* have been "contributing factors" to the accident. Yet there is no evidence any traffic laws were broken, and Cochran admitted that Martinez's driving did not cause the hydroplane and that Martinez responded correctly to the hazardous situation when it occurred.

These facts are worlds apart from those in *Sierra*, *Tyra*, *Mann*, or *Drichas*, which involved high levels of intoxication, at-fault accidents, traffic violations, and patently dangerous situations that threatened numerous drivers. The only similar factor is intoxication. However, in cases like *Tyra* and *Mann*, much was made about the extreme extent of those defendants' intoxication. Here, the evidence demonstrated that while Martinez may have been legally intoxicated, it was at a low level and did not cause the accident or hinder his reaction to it.

At best, Martinez's case provides *Jackson's* insufficient "mere modicum" of evidence of reckless driving. It is much more akin to *Cates*, where there may have been speeding but other factors indicated safe driving, and *Pointe*, where there was so little evidence from which to draw after-the-fact inferences about the defendant's driving that doing so was an exercise in rank speculation. Just like those cases, the evidence of Martinez's driving does not establish recklessness.

### d. Capability of Causing Death or Serious Bodily Injury

The second inquiry—capability of causing death or serious bodily injury—is about the circumstances the vehicle is used in. "[A] deadly weapon finding requires evidence that others were endangered, and not merely a hypothetical potential for danger if others had been present." *Mann*, 13 S.W.3d at 92; *accord Sierra*, 280 S.W.3d at 256; *Drichas*, 175 S.W.3d at 798–99. That means there must be "evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner." *Drichas*, 175 S.W.3d at 799.

In *Tyra*, others were endangered because the defendant actually killed someone. *Tyra*, 897 S.W.2d 799. In *Sierra* and *Mann*, others were endangered because there was direct evidence that those defendants almost struck other motorists. *Sierra*, 280 S.W.3d at 25; *Mann*, 13 S.W.3d at 92.

By contrast, in *Cates*, no others were endangered because the evidence did not show whether there was anyone else on the road with the defendant at the time of the accident. *Cates*, 102 S.W.3d at 738. And in *Foley*, no others were endangered because the evidence showed that the closest person to the accident was sixty feet away inside a building and did not show whether there was anyone else on the road at the time of the accident. *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi 2010, no pet.).

In Martinez's case, unlike in *Tyra*, no one was killed or even injured. And whereas *Sierra* and *Mann* highlighted other motorists who were actually put in

danger, there was no evidence at all that others were endangered at the time of Martinez's accident. The only eyewitness account of the incident came from an officer on the other side of the highway behind a concrete barrier. The hearsay testimony about what that officer told dispatch made no mention at all of any people or vehicles at the time, and that officer was at least as safe some distance away with a concrete retaining wall between him and Martinez as the office worker some distance away inside a building in *Foley*.

There was testimony that there was light traffic in the area when officers arrived. Not only does "light" fail to inspire confidence that other drivers were endangered, the testimony offered to establish traffic during the accident—that there was traffic at other times that evening and that it was common for families to be on the road at that day and time—was quite literally the sort of conjecture that *Sierra*, *Drichas*, and *Mann* prohibit. In Martinez's case, as with *Cates*, there was simply no evidence (not even a modicum) that anyone was actually endangered by the driving in question, which renders the evidence insufficient to show that Martinez's vehicle as-used was capable of causing death or serious bodily injury.

### e. Remedy

The proper remedy for an improper deadly weapon finding is for the reviewing court to simply delete it. *Plummer v. State*, 410 S.W.3d 855, 856 (Tex. Crim. App. 2013); *Drichas*, 175 S.W.3d at 798. That is the correct result here, where the issue should never have even been submitted to the jury over Martinez's motion for directed verdict on the matter.

**Issue Two** Injured Constable Testimony

The trial court abused its discretion by permitting testimony about an injured constable over Martinez's objections to relevance and prejudice, which caused harm affecting Martinez's substantial rights

### a. Preservation of Evidentiary Error

Any error related to the admission of evidence must be preserved by a timely objection at trial. TEX. R. APP. PROC. 33.1 (a). Here, when Officer McDonald offered his story about the constable who was once seriously injured by a drunk driver at nearly the same location, counsel objected that the testimony was not relevant and that it was more prejudicial than probative.

### b. Relevance

Procedurally admissible evidence must still be relevant for admission. Evidence is relevant if it makes "any fact that is of consequence" to the case "more probable or less probable." TEX. R. EVID. 401. The test is whether a reasonable person would find the evidence helpful in resolving a matter of consequence to the trial. *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990). Officer McDonald's testimony was in no way relevant—it concerned a situation and parties wholly disconnected from Martinez's case and had no bearing on the probability of any fact that mattered to the case.

### c. Prejudice

Even relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Weighing probative value against prejudice is done by balancing

> (1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational way; (3) the time the proponent will need to develop the evidence; and (4) the proponent's need for the evidence, *i.e.*, whether other evidence is available and whether the fact of consequence is related to a disputed issue.

*Montgomery*, 810 S.W.2d at 378; *accord Powell v. State*, 189 S.W.3d 285, 287 (Tex. Crim. App. 2006). Once a Rule 403 objection has been made, a trial court *must* perform this balancing test; if the record is silent on that point, an appeals court must presume the trial court did so but simply did not put it on the record. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).

Even if the injured constable testimony was relevant, applying the balancing test to Martinez's case still weighs in favor of exclusion. The evidence has no probative value whatsoever. Its purpose was to support the deadly weapon allegation, but as *Sierra*, *Drichas*, and *Mann* all expressly hold, that cannot be done through hypothetical or speculative testimony; what happened once in another situation was of no consequence to Martinez's case. Yet the evidence did have the potential to impress the jury in an irrational way by directly connecting Martinez's accident, which harmed no one, with an accident involving an entirely

different person, place, and time in which a law enforcement officer was seriously injured and hospitalized. While the time the prosecution needed to develop the evidence was relatively short, which favors admission, other evidence was readily available to support the deadly weapon issue if it was supportable, such as the testimony of Officer Morris, who was said to have been an eyewitness to the accident but did not testify at trial. On balance, with three of the four factors militating against admissibility (and arguably the three most important factors at that), the testimony should have been excluded.

### d. Review of Evidentiary Error

Admissibility decisions by a trial court are reviewed for abuse of discretion. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). Admitting evidence is an abuse of discretion if the decision on admissibility "lies outside the zone of reasonable disagreement." *Martinez*, 327 S.W.3d at 736. In Martinez's case, the disputed testimony could not legally have affected the outcome of the deadly weapon finding, which (as discussed at length as part of Martinez's first point of error) cannot be based on a hypothetical scenario about what could have happened. As a result, there can be no reasonable disagreement about whether the testimony was relevant and certainly none about its prejudicial nature. The court abused its discretion by admitting it.

### e. Harm Analysis

Improper admission of evidence is a non-constitutional error, so when an abuse of discretion has been shown, the next step is a harm analysis to determine whether the error affected any "substantial rights." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *see* TEX. R. APP. PROC. 44.2 (b) (standards for non-constitutional errors). Inadmissible evidence does not affect any substantial rights "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla*, 78 S.W.3d at 355 (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). That determination is made by considering

> everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable. We have also recognized that whether the State emphasized the error can be a factor.

*Id.* at 355–56.

Martinez's case was a "total refusal" DWI with no field sobriety, breath, or blood test evidence and no overwhelming proof of intoxication from other factors. While Martinez does not challenge the bare sufficiency of that evidence, it was a close, vigorously disputed trial. By connecting Martinez's non-injury case with a wholly separate matter that involved substantial injuries to a law enforcement officer, the prosecution inflamed the jury against Martinez. It may have influenced both the affirmative deadly weapon finding and the finding of

guilt itself, either of which is much more than a "slight effect" in case like this. Yet as discussed above, it is not evidence that could have legally supported either issue, and it certainly was not invited by any defensive theory. Although the state did not emphasis the testimony in argument, the prosecutor's speaking response to counsel's objection highlighted the testimony for the jury. The inadmissible testimony as a whole likely affected the jury's decision-making, and therefore, Martinez's substantial rights.

### f. Remedy

If a court cannot assure itself that inadmissible evidence had no or only slight effect on the verdict, the proper remedy is reversal and remand for a new trial. *Johnson*, 967 S.W.2d at 417. That is the appropriate outcome here.

# PRAYER

Martinez moves this court reverse the judgement of the trial court and remand the case for a new trial there. Alternatively, if this court finds only that the evidence was legally insufficient to support at a deadly weapon finding, then Martinez moves this court to modify the judgment in this case by deleting the deadly weapon finding.

RESPECTFULLY SUBMITTED,

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.        Austin, Texas 78701
*ph* (512) 921-8247     *fax* (512) 451-5882
*email* ellic@sahuallalaw.com

# CERTIFICATE OF COMPLIANCE

I certify that the parts of this document not excluded under TEX. R. APP. PROC. 9.4 (i)(1) contain a total of 4,159 words according to the word count of the computer program used to prepare the document.

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.        Austin, Texas 78701
*ph* (512) 921-8247      *fax* (512) 451-5882
*email* ellic@sahuallalaw.com

# CERTIFICATE OF SERVICE

I certify that on July 10, 2015, a true and correct copy of this document was served on the Honorable Jana Duty (whose address is 405 Martin Luther King, Box 1, Georgetown, Texas 78262) through the electronic filing manager.

**MR. ELLIC SAHUALLA**
Counsel for Appellant
State Bar Number 24057365

600 W. 13th St.        Austin, Texas 78701
*ph* (512) 921-8247     *fax* (512) 451-5882
*email* ellic@sahuallalaw.com