David Ray POINTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–11–00026–CR.

Court of Appeals of Texas,
Beaumont.

Submitted March 22, 2012.

Decided May 30, 2012.

Michelle Dishon Ferguson, Orange, Paul (Chip) Ferguson, Provost Umphrey Law Firm, Beaumont, for appellant.

John D. Kimbrough, Dist. Atty., Michael S. Marion, Asst. Dist. Atty., Orange, for appellee.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

A jury convicted David Ray Pointe of driving with a child passenger while intoxicated and sentenced Pointe to ten years in prison. In eight appellate issues, Pointe challenges the denial of his request for the appointment of an expert, the sufficiency

of the evidence to support his conviction and the jury's deadly weapon finding, the admission of certain evidence, and clerical errors in the judgment. We affirm the trial court's judgment as modified.

Factual Background

Deputy Frank Carpenter responded to the nighttime scene of a two-vehicle collision involving Pointe and Margaret Richter. Carpenter testified that Pointe told him that Richter turned in front of his vehicle and he could not stop. Pointe's ten-year-old son was in the vehicle with Pointe. Ethan Sonnier saw the collision and testified that Richter was preparing to turn, Richter pulled out in front of Pointe's vehicle, and Pointe's vehicle "hammered" Richter's vehicle. Deborah Kay Foster, Richter's daughter, quickly arrived at the scene. Foster testified that Richter was crying and upset. Richter asked, "Where did they come from?" and told Foster she did not see anything, did not know who hit her, "never saw anybody," and "didn't see any lights coming at [her]." Carpenter believed that Richter caused the accident and he issued a citation to Richter for failure to yield the right of way.

Carpenter smelled an odor of alcohol coming from Pointe's vehicle, found alcohol and bottles of alcohol in the vehicle, and found a piece of broken beer bottle on the road in close proximity to the vehicle. Robert Edward Pointe, Pointe's brother, testified that they planned to watch a basketball game and drink the night of the accident, so he was not surprised that Pointe had alcohol in his vehicle. Carpenter testified that the beer bottles in Pointe's vehicle could have broken on impact. Pointe initially told Carpenter that he had previously consumed three beers, but later stated he drank four beers. When interacting with Pointe, Carpenter did not observe slurred speech or staggering, and he testified that Pointe was able to answer his questions. Robert, who came to the scene, testified that Pointe was "pretty coherent" and said he was "hurting[.]" Based on Pointe's statements that he had consumed beer and the smell of alcohol coming from Pointe's vehicle, Carpenter felt that Pointe was possibly intoxicated. Because he is not certified to administer field sobriety tests, Carpenter consulted Texas State Trooper Philip Brady.

Brady testified that Pointe had glassy and bloodshot eyes, slurred speech, and smelled of alcohol. He administered the horizontal gaze nystagmus test ("HGN") and observed six clues of intoxication. He saw no signs of head trauma. He admitted that the environment was not ideal for administering this test and that he did not perform the test according to the prescribed and standardized manner. Brady also administered the walk-and-turn test, but Pointe lost his balance and failed to maintain the starting position. Pointe told Brady that he was not going to perform the test because he was hurting and needed an ambulance.

During the ambulance ride to the hospital, Foster heard Pointe tell the ambulance attendant that he drank two or three beers. Brady testified that, according to Pointe's medical records, he drank five or six beers. At the scene, Pointe told Brady he drank about four beers. Brady testified that intoxicated drivers are not accurate or consistent regarding the number of alcoholic beverages they have consumed. The record indicates that Pointe claimed to have consumed the beers within hours before the accident, the most recent of which he consumed forty-five minutes before the accident. Robert testified that he would be surprised if Pointe drank five or six beers and then drove his vehicle with his son inside, but would not be surprised if he

drank those beers over a period of time and later drove with his son inside the vehicle.

Carpenter testified that Pointe refused his request for a blood specimen. Brady testified that Pointe refused to provide a urine sample to hospital personnel, stating that he did not see any blood in his urine and did not need to provide a sample. Brady testified that Pointe likewise refused to allow medical personnel to draw blood for evaluation.

Based on Pointe's appearance, manner of speech, statements regarding the number of beers he drank, smell of alcohol, and performance on the HGN test, Brady concluded that Pointe "did not have reasonable use of his mental or physical faculties due to intoxicating substance." He maintained this opinion even after learning that hospital personnel diagnosed Pointe with a concussion. Carpenter could not testify that Pointe had been drinking while driving, but he testified that a motor vehicle is capable of causing serious bodily injury or death.

### Sufficiency of the Evidence

In issues three and seven, Pointe contends that the evidence is insufficient to support his conviction for driving with a child passenger while intoxicated and to support the jury's deadly weapon finding. We address these issues first because, if sustained, they would afford Pointe the greatest relief.

The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond

a reasonable doubt." *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App.2010). We assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper,* 214 S.W.3d at 13.

A person commits an offense when the person is intoxicated while operating a motor vehicle in a public place and that vehicle contains a passenger who is younger than fifteen years of age. Tex. Penal Code Ann. § 49.045(a) (West 2011). A person is intoxicated when he does not have the normal use of mental or physical faculties by reason of the introduction of alcohol into the body. *Id.* § 49.01(2)(A) (West 2011). A deadly weapon includes anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id.* § 1.07(a)(17)(B) (West Supp. 2011).[1]

■ Pointe contends that the evidence is insufficient to support a finding that he was intoxicated on the night of the collision. The video recording of Pointe's HGN test was admitted into evidence for the jury's review, giving the jury an opportunity to observe Pointe's actions. The jury heard testimony that Richter caused the collision, Robert did not believe Pointe would drink and drive with his son inside his vehicle, Pointe was going to Robert's home to drink and watch basketball, Car-

---

1. Because the amendments to section 1.07 are not material to this case, we cite to the current version of the statute.

penter never determined whether Pointe was intoxicated, Pointe was able to communicate, Brady performed the HGN test improperly, no other field sobriety tests were conducted, and Pointe was diagnosed with a concussion. The jury also heard testimony that Pointe consumed alcohol before driving on the night of the collision, Pointe gave differing accounts of the number of beers he consumed, Pointe's vehicle contained several bottles of alcoholic beverages that may or may not have broken on impact, Carpenter felt concerned enough about the possibility of intoxication to consult Brady, Brady observed Pointe's bloodshot, glassy eyes and slurred speech and testified that Pointe smelled of alcohol, and Pointe refused to provide blood or urine samples. The jury also heard Brady's testimony that Pointe "did not have reasonable use of his mental or physical faculties due to intoxicating substance[ ]" and that this opinion was based on numerous factors and not the HGN test results alone.

As sole judge of the weight and credibility of the evidence, the jury bore the burden of determining what to believe. *See Hooper,* 214 S.W.3d at 13. In doing so, the jury could reasonably conclude that Pointe did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body. *See* Tex. Penal Code Ann. § 49.01(2)(A); *see also Griffith v. State,* 55 S.W.3d 598, 601 (Tex.Crim.App.2001) (Refusal to take a blood-alcohol test is relevant evidence of intoxication.). Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could find, beyond a reasonable doubt, that Pointe committed the offense of driving with a child passenger while intoxicated. *See* Tex. Penal Code Ann. § 49.045(a); *see also Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781; *Hooper,* 214 S.W.3d at 13. We overrule issue three.

When evaluating the deadly weapon issue in a DWI case, we consider (1) the manner in which the defendant used the motor vehicle during the felony; and (2) whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury. *Sierra v. State,* 280 S.W.3d 250, 255 (Tex.Crim.App.2009). Regarding the manner in which Pointe used his vehicle during commission of the offense, we consider factors such as (1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle. *Foley v. State,* 327 S.W.3d 907, 916 (Tex.App.-Corpus Christi 2010, pet. ref'd); *see Sierra,* 280 S.W.3d at 255–56.

As previously discussed, the record contains sufficient evidence by which the jury could conclude that Pointe was intoxicated. The State contends that the jury could infer from Richter's statements at the scene of the collision and Sonnier's failure to mention seeing Pointe's vehicle before the accident that Pointe was driving recklessly by speeding or failing to use his headlights. However, the jury heard testimony that Richter pulled out in front of Pointe's moving vehicle and was at fault for causing the accident. The record contains no other evidence to support an inference that Pointe was driving recklessly. While a jury may draw multiple reasonable inferences from the evidence, it cannot draw conclusions based on speculation. *Hooper,* 214 S.W.3d at 16. Under the circumstances of this case, we conclude that, even viewing the evidence in the light most favorable to the verdict, a rational jury could not find, beyond a reasonable doubt, that the manner in which Pointe used his vehicle was capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B); *see also*

*Sierra,* 280 S.W.3d at 255; *Hooper,* 214 S.W.3d at 13. We sustain issue seven.

### Request for Appointment of an Expert

■ In issue one, Pointe contends that the trial court erred by denying his request for appointment of an expert. "[D]ue process requires access to the raw materials integral to the building of an effective defense." *Rey v. State,* 897 S.W.2d 333, 337 (Tex.Crim.App.1995). The State must provide an indigent defendant the basic tools to present his defense within our adversarial system. *Id.* Three factors are relevant to whether the State must provide expert assistance: (1) the private interest that will be affected by the State's action; (2) the governmental interest that will be affected if the safeguard is to be provided; and (3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Id.* (quoting *Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). "This analysis is conducted with a view towards whether failing to provide the defendant with the expert help he claims is necessary creates 'a high risk of an inaccurate verdict.'" *Ex parte Jimenez,* 364 S.W.3d 866, 876 (Tex.Crim.App. 2012) (not yet released for publication) (quoting *Busby v. State,* 990 S.W.2d 263, 271 (Tex.Crim.App.1999) (per curiam)).

Pointe filed a pre-trial motion for appointment of an expert, in which he alleged that testimony from a field sobriety expert was required to rebut opinions that would be offered by the State. At the pre-trial hearing, defense counsel expressed his belief that the State planned to call Trooper Brady to testify regarding Pointe's performance on field sobriety tests. Counsel stated that he had previously used an expert, whose name he believed to be "Platt," and that Platt charged a $1,500 flat rate two years ago, but may charge up to $2,000 now. Counsel explained that Platt would testify that the HGN test should not be performed on a person suffering from a concussion. According to counsel, Platt has trained officers in Texas regarding the performance of the HGN test.

Alternatively, defense counsel requested appointment of a medical expert to testify that a concussion causes nystagmus. Counsel stated that he is certified to perform the HGN test and he explained, "There can be damage to the vestibular part of the ear that can cause a nystagmus in relation to a concussion." The trial court asked whether literature is available regarding the HGN test and defense counsel responded affirmatively. The State mentioned the Standardized Field Sobriety Test Manual, but defense counsel explained that the manual does not discuss "concussions, per se[,]" but says that officers check for pupil dilation to determine whether the person has brain damage. Defense counsel complained that he had provided the State with articles for Brady's review, but the State had refused to provide these materials to Brady. The trial court determined that literature was available and denied Pointe's motion.

"The private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling." *Ake,* 470 U.S. at 78, 105 S.Ct. 1087. "The interest of the individual in the outcome of the State's effort to overcome the presumption of innocence is obvious and weighs heavily in our analysis." *Id.* "The State's interest in prevailing at trial—unlike that of a private litigant—is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases." *Id.* at 79, 105 S.Ct. 1087. The State's interest in deny-

ing Pointe the requested expert assistance is not substantial, given the compelling interest of both the State and the individual in accurate dispositions. *See id.* Factors one and two favor Pointe.

 Regarding the third factor, to which we give the most weight, Pointe was required to show that the requested expert could provide assistance that was likely to be a significant factor at trial. *See Jimenez,* 364 S.W.3d at 876; *see also Rey,* 897 S.W.2d at 339. An indigent defendant is not entitled to the appointment of an expert when he offers " 'little more than undeveloped assertions that the requested assistance would be beneficial.' " *Id.* at 878 (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)). The defendant must provide concrete reasons for requiring the appointment of an expert, set forth in detail what assistance is being requested, identify the expert by name, explain what the expert will do, explain why that will be important in representing the defendant, and identify the approximate cost of appointing that expert. *Id.* at 878. To make this threshold showing, a defendant needs to offer affidavits or other evidence. *Williams v. State,* 958 S.W.2d 186, 193 (Tex.Crim.App.1997).

In support of his motion, Pointe offered defense counsel's undeveloped assertions that an expert was necessary. *See Jimenez,* 364 S.W.3d at 878. Pointe did not provide affidavits or other evidence to support his motion. *See Williams,* 958 S.W.2d at 193; *see also Smith v. State,* 131 S.W.3d 928, 930 (Tex.App.-Eastland 2004, pet. ref'd) (Appellant failed to make threshold showing when he did not attach affidavits or other evidence to his motion seeking appointment of an expert.). He has failed to make the threshold showing that an expert's assistance was necessary. Moreover, as previously discussed, the rec-

ord indicates that even without the results of the HGN testing, the jury could reasonably conclude that Pointe was intoxicated. Thus, we cannot say that the trial court's failure to appoint the requested expert created a high risk of an inaccurate verdict. *See Jimenez,* 364 S.W.3d at 876. Under these circumstances, the trial court did not err by denying Pointe's request for appointment of an expert. We overrule issue one.

## Evidentiary Issues

In issues two, four, five, and six, Pointe raises evidentiary challenges regarding the trial court's admission of evidence. We review the trial court's decision to admit evidence for abuse of discretion. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex. Crim.App.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 2966, 180 L.Ed.2d 253 (2011). "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" Tex.R. Evid. 103(a); *see* Tex.R.App. P. 44.2(b). "We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor v. State,* 268 S.W.3d 571, 592 (Tex.Crim.App.2008).

In issues two and four, Pointe challenges the trial court's decision to allow Brady to testify regarding the issue of intoxication. He complains that Brady's method and technique used to administer and interpret the field sobriety tests is flawed. Pointe argues that Brady (1) failed to perform a full battery of field sobriety tests; (2) did not understand the subject matter of the HGN test; and (3) did not administer the HGN test properly or in an appropriate environment. He further contends that Brady should not have been allowed to testify about an article that Pointe con-

tends Brady had not read and did not understand.

Brady testified that the latest piece of literature he had read indicated that the HGN test was accurate at seventy-seven percent when four out of six clues of intoxication were present. When asked whether this meant that the test was flawed twenty-three percent of the time, Brady responded:

> I don't know if that can be said, but the data that was originally generated, which was, I think, back in 1976, consisted of laboratory conditions. I haven't read the actual—the actual study, and I'm not sure how it scored statistically.

At this juncture, defense counsel objected, "If he hasn't read the study and doesn't know the science behind what this particular 77 percent—whether it's right or wrong, then I would object to him testifying to that because he has no personal knowledge." The trial court overruled the objection. Brady proceeded to testify that researchers determined the HGN test to be seventy-seven percent accurate, and he explained how he administers the HGN test. When the State sought to admit into evidence a video recording of Pointe's HGN test, defense counsel objected and asked to take Brady on voir dire regarding "his expertise with the actual bouncing of the eyes and other causes[,]" but the trial court denied this request. Brady subsequently testified that he did not know the science behind the HGN test. Defense counsel moved for a directed verdict on grounds that the basis for Brady's opinion on intoxication arose out of the "inaccurate" HGN test. The trial court denied this motion.

 Assuming, without deciding, that the trial court abused its discretion by admitting the complained-of testimony, we cannot say that Pointe's substantial rights were affected. *See* Tex.R. Evid. 103(a);

*see also* Tex.R.App. P. 44.2(b). During closing arguments, the State discussed Brady's testimony regarding the HGN test and admitted the testing was not administered perfectly, but urged the jury to focus on Pointe's conduct. Defense counsel told the jury that Brady "screwed up the tests" and explained his reasons for discounting the State's evidence of intoxication, including Brady's testimony regarding the HGN test. The trial court instructed the jury on the definition of "intoxicated" and instructed the jury that it could only convict Pointe if it found him guilty beyond a reasonable doubt of driving with a child passenger while intoxicated. Additionally, the variations in Brady's administration of the HGN test did not render his testimony inadmissible or unreliable, but affected the weight to be given to his testimony. *See Plouff v. State*, 192 S.W.3d 213, 219 (Tex. App.-Houston [14th Dist.] 2006, no pet.) ("Slight variations in the administration of the HGN test do not render the evidence inadmissible or unreliable, but may affect the weight to be given the testimony."). Even without Brady's testimony regarding the HGN test, the record contains sufficient evidence from which the jury could find that Pointe was intoxicated. After examining the record as a whole, we have fair assurance that the error, if any, did not influence the jury, or had but slight effect. *See Taylor*, 268 S.W.3d at 592. We overrule issues two and four.

 In issue five, Pointe argues that Carpenter was not qualified to testify regarding the issue of intoxication. Carpenter testified that he has received no specialized training regarding the detection of intoxication or administration of field sobriety tests and is not certified to administer field sobriety tests, but that specialized training was not required to determine whether a person is intoxicated. When the State asked Carpenter if he determined whether Pointe was intoxicated, defense counsel objected on grounds that

Carpenter was not qualified as an expert to testify regarding intoxication. The trial court overruled the objection.

■ Police officers are not precluded from providing lay testimony regarding events which they have personally observed. *Osbourn v. State,* 92 S.W.3d 531, 536 (Tex.Crim.App.2002). Carpenter admitted that he could not definitively say that Pointe was intoxicated, but he testified to his observations that led him to believe that Pointe may have been intoxicated. Because Carpenter was entitled to testify to his personal observations, the trial court did not abuse its discretion by allowing Carpenter's testimony. *See id.* at 536, 538–39. We overrule issue five.

In issue six, Pointe complains about the admission of Foster's testimony regarding statements made by Richter at the scene of the collision. During Foster's testimony, defense counsel objected, on hearsay grounds, to testimony regarding what Richter said to Foster. The State argued that the testimony was admissible as a present sense impression and excited utterance. The trial court overruled the objection. Foster subsequently testified to Richter's statements at the scene of the collision. Pointe complains that the State failed to lay a predicate for the hearsay exceptions on which it relied.

■ Hearsay, a declarant's out-of-court statement offered in evidence to prove the truth of the matter asserted, is inadmissible. Tex.R. Evid. 801(d); Tex.R. Evid. 802. Exceptions to the hearsay rule include a present sense impression and an excited utterance. Tex.R. Evid. 803(1), (2). An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex.R. Evid. 803(2). This exception is based on the assumption that, at the time of the statement, the declarant is not capable of the kind of reflection that

would enable him to fabricate information. *Apolinar v. State,* 155 S.W.3d 184, 186 (Tex.Crim.App.2005). Whether a statement qualifies as an excited utterance depends on whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time the statement was made. *Id.* at 186–87. Factors influencing this determination include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving. *Id.* at 187.

■ The record indicates that Richter made the complained-of statements shortly after the collision occurred. Richter was still in her wrecked vehicle when Foster arrived at the scene shortly after the collision. Richter was in her seventies at the time and had been involved in a major collision that involved significant damage and injury. The record does not indicate that Richter's statements were made in response to a question. Nor do we construe Richter's statements as self-serving. The statements were made to her daughter, not to the law enforcement officers who determined Richter caused the accident. The trial court could reasonably conclude that Richter was still dominated by the emotions, excitement, fear, or pain of the collision at the time she made the complained-of statements. *See id.* at 186–87. The trial court did not abuse its discretion by admitting Foster's testimony pursuant to the excited utterance exception to the hearsay rule. For this reason, we need not address whether the testimony was admissible as a present sense impression. *See* Tex.R.App. P. 47.1. We overrule issue six.

## Clerical Errors

In issue eight, Pointe contends that the trial court's judgment contains clerical er-

rors. First, the judgment lists the degree of the offense as a second degree felony. Driving with a child passenger while intoxicated is a state jail felony, although, as in this case, enhancements may increase the punishment range to that of a higher degree of felony. Tex. Penal Code Ann. § 49.045(b). Second, the judgment does not reflect that Pointe pleaded "true" to the enhancements in the indictment or that the trial court made findings on the enhancements. According to the record, however, Pointe pleaded "true" to the two enhancement paragraphs alleged in the indictment. Pointe asks this Court to reform the judgment to reflect the degree of the offense as a state jail felony, that Pointe pleaded "true" to the two enhancement paragraphs, and that the trial court found the enhancements to be true. The State concedes that the judgment should be modified as requested by Pointe. Accordingly, we sustain issue eight.

### Conclusion

In summary, we modify the judgment to remove "2nd Degree Felony" from that section of the judgment entitled "Degree of Offense[ ]" and substitute "State jail Felony" in its place. We modify those sections of the judgment entitled "Plea to 1st Enhancement Paragraph[,]" "Plea to 2nd Enhancement/Habitual Paragraph[,]" "Findings on 1st Enhancement Paragraph[,]" and "Findings on 2nd Enhancement/Habitual Paragraph" by deleting "N/A" from each section and substituting "True" in its place. Finally, we modify the judgment to delete the deadly weapon finding. We affirm the judgment as modified. *See* Tex.R.App. P. 43.2(b).

AFFIRMED AS MODIFIED.