

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00372-CR

———————————————————

JOSHUA JORDAN HAZLEWOOD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR17-0749

Before Pittman, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Joshua Jordan Hazlewood appeals his conviction and thirty-year sentence for evading arrest, in which a jury found that he used or exhibited a deadly weapon. *See* Tex. Penal Code Ann. § 38.04(a). In two points, he argues that the evidence is insufficient to support the jury's deadly weapon finding and that the jury charge on punishment egregiously harmed him by violating his due process and due course of law rights. We affirm.

## Evidence Sufficient to Support Deadly Weapon Finding

In his first point, appellant contends that the jury's deadly weapon finding is not supported by sufficient evidence. We will discuss the background facts in our review of this point.

### Applicable Law and Standard of Review

If the factfinder affirmatively finds that a defendant used or exhibited a deadly weapon in committing or immediately fleeing from committing a felony offense, the trial court must include that finding in the judgment. Tex. Code Crim. Proc. Ann. art. 42A.054(b), (c); Tex. Penal Code Ann. § 1.07(a)(17). When addressing a complaint that the evidence is insufficient to support a deadly weapon finding, we review the record to determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that the appellant used or exhibited a deadly weapon. *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019).

By statute, a motor vehicle is not a deadly weapon per se, but it can be found to be a deadly weapon if it is used in a manner that is capable of causing death or serious bodily injury. *Id.* (citing Tex. Penal Code Ann. § 1.07(a)(17)(B)). Thus, in determining whether evidence is sufficient to support a deadly weapon finding, we must (1) "evaluate the manner in which the defendant used the motor vehicle during the felony" to determine whether it was reckless or dangerous and (2) "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury," which involves determining if the manner of use created actual danger to others. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). The evading arrest statute "does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require [the] appellant to intentionally strike another vehicle to justify a deadly weapon finding." *Drichas*, 175 S.W.3d at 799.

**Applicable Facts**

Parker County Sheriff's Deputy Keith Fisher was on patrol at 9:30 p.m. on a September night when he saw appellant driving a truck with defective license plate lights. He got behind appellant's truck and activated his overhead lights and sirens, but appellant did not pull over. Appellant was driving away from Mineral Wells outside the city limits. But after about two to three miles, appellant turned around and started heading toward Mineral Wells, which is a few miles outside the Parker County

3

boundary and in Palo Pinto County. Traffic was light with some cars pulling over to the side of the road.

Fisher followed appellant into the city of Mineral Wells where appellant ran a red light, driving in between two cars that were stopped at the light. He ran at least one red light after that. Mineral Wells police had blocked an intersection, but appellant merely turned right at that intersection, continuing to drive away from Fisher and other officers who had joined in the pursuit. Appellant drove in and out of a Motel 6 parking lot, through a grassy median between the Motel 6 lot and the street where a patrol car tried unsuccessfully to block him, and through a CVS parking lot. Although no pedestrians were in the parking lots when appellant drove through, there were cars in the CVS parking lot, and appellant was driving fast and taking sharp, quick turns. DPS Trooper Darin Woodson testified that it did not appear appellant braked or looked out for pedestrians. Fisher believed that appellant was using the truck as a deadly weapon. Appellant later told Fisher he had been talking on the phone to his fiancée while driving.

After appellant drove out of the CVS parking lot, Woodson took over the lead, and the chase lasted for about another fifteen minutes. Appellant eventually slowed down and pulled over; the officers took him into custody.

Fisher's dashcam recorded his pursuit of appellant, and the jury viewed it at trial. The video comports with Fisher's and Woodson's testimony and also clarifies Fisher's testimony about the traffic being "light." Appellant passed several cars before

4

entering Mineral Wells, most of which had pulled over to the road's shoulder; when he entered Mineral Wells, more cars were on the road, and appellant passed them, running at least one red light, at what appears to be a somewhat high rate of speed. When appellant turned out of the CVS parking lot, more cars were on the road, and a car had just turned at a stoplight that appellant ended up running.

During the 32-minute chase, appellant drove up to 90 miles per hour, ran several stop lights, and ran at least one stop sign. He was speeding while driving through the Motel 6 and CVS parking lots. But appellant did not hit or harm any person or car, and he used his blinker to signal some turns.

**Evidence Supports Finding**

We hold that the evidence supports that appellant drove in a reckless or dangerous manner and that the manner of his use of the truck endangered others. Appellant (1) drove at high speeds both in and out of town and through parking lots, (2) ran red lights on roads with more than one nearby car, (3) caused officers to block the road in an attempt to stop him, (4) drove through a grassy median—skidding slightly—right next to an approaching police car, and (5) led a group of officers on a 32-minute high-speed chase, apparently while talking on his cell phone for at least part of the time. *See id.* at 797, 799 ("[A] deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner." (citing *Mann v. State*, 13 S.W.3d 89, 92 (op. on reh'g) (Tex. App.–

5

–Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001))); *Cummings v. State*, No. 05-17-00852-CR, 2018 WL 3629105, at \*1, \*3–4 (Tex. App.—Dallas July 31, 2018, pet. ref'd) (mem. op., not designated for publication).

Appellant relies on three intermediate appellate court opinions to support his argument, but they do not change our conclusion.

In *Glover v. State*, the appellant had been driving while intoxicated—the charged offense—and speeding, but the record did "not contain any other evidence that Glover was driving recklessly." No. 09-13-00084-CR, 2014 WL 1285134, at \*2 (Tex. App.—Beaumont Mar. 26, 2014, pet. ref'd) (mem. op., not designated for publication). *Foley v. State* involved similar circumstances: Foley crashed his truck while driving intoxicated, but the evidence showed that the closest person nearby was working in an office building sixty feet away. 327 S.W.3d 907, 910, 917 (Tex. App.— Corpus Christi–Edinburg 2010, pet. ref'd) ("[T]here is no evidence in the record before us that there were other persons or vehicles at the same 'time and place' as Foley. No one other than Foley himself 'was placed in danger of serious bodily injury or death.'" (citations omitted)). And in *Pointe v. State*, officers responded to a two-car collision; the investigation indicated that a driver had pulled out in front of Pointe's car and was at fault. 371 S.W.3d 527, 530, 532 (Tex. App.—Beaumont 2012, no pet.). But after speaking to Pointe and observing beer bottles in the car, the investigating officer thought Pointe might be intoxicated. *Id.* at 530. Pointe then showed signs of

6

intoxication on some of the standard field sobriety tests. *Id.* But the record contained no inferences that Pointe had engaged in any reckless or dangerous driving. *Id.* at 532.

We overrule appellant's first point.

## No Egregiously Harmful Charge Error

In his second point, appellant argues that he was egregiously harmed by the trial court's erroneous inclusion of the required good-conduct-time instruction in the jury charge at punishment because the instruction does not accurately state that he is ineligible to earn good-conduct-time credits for parole release until he has served at least half his sentence. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (mandating instruction); Tex. Gov't Code Ann. § 508.145(d)(1)(B), (2) ("An inmate described by Subdivision (1) is not eligible for release on parole until the inmate's actual calendar time served, *without consideration of good conduct time*, equals one-half of the sentence or 30 calendar years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calendar years." (emphasis added)).

Appellant acknowledges that the court of criminal appeals has held that the inclusion of the statutorily required instruction is not error[1] in this situation but that he raised the issue in this court to preserve it for further review. *See Luquis v. State*, 72 S.W.3d 355, 362–68 (Tex. Crim. App. 2002). We must follow precedent of the higher

---

[1]Because appellant did not object to the charge, we review any error for egregious harm, but we first determine whether error occurred. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

courts. *See Hailey v. State*, 413 S.W.3d 457, 489 (Tex. App.—Fort Worth 2012, pet. ref'd).

But, here, although the written instruction given to the jury and read by the trial court tracks the statutory language with a few minor alterations (in strikeouts and italics), it contains one inaccurate addition (in bold):

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, ~~the defendant~~ *he* will not become eligible for parole until the actual time served **plus any good conduct time** equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time ~~the defendant~~ *he* may earn. ~~If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole.~~ Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if *he is* sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular

8

defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

[Emphases and alterations added.] *See* Tex. Code Crim. Proc. Ann. § 37.07.

Technically, the bolded addition in the charge deviates from the statutorily required language. But, at most, it renders the informational sentence about the deadly weapon finding's impact on how much time appellant will have to serve ambiguous: it says he is not eligible for parole until his actual time served plus good conduct time—without consideration of good conduct time—equals the lesser of one-half of the sentence or thirty years. But assuming the ambiguity was error, we nevertheless conclude that appellant was not egregiously harmed.

In making an egregious harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). *See generally Gelinas v. State*, 398 S.W.3d 703, 708–10 (Tex. Crim. App. 2013) (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011) (citing *Almanza*, 686 S.W.2d at 172). The

purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

Appellant pleaded true to two prior felony enhancements in accordance with penal code section 12.42(d); thus, his punishment range was 25 to 99 years' confinement. Tex. Penal Code Ann. § 12.42(d), 38.04(b)(2)(A). Appellant's counsel acknowledged this fact and argued for a sentence "somewhere in the bottom portion of that range" and "the lower end of that range." She also talked about the effect of the deadly weapon finding on the sentence—acknowledging appellant would be serving a significant amount of time because of that finding and the felony enhancements—and appeared to be referencing good conduct time:

> You can't consider for how much, because we don't know how much. We just know it's there. And that's what they do now is they present it to you in the charge so you had met and know it's there, we just don't know how much time it would bring.

The majority of the State's argument for a significant punishment did not center around the nature of the charged offense but on appellant's past criminal history. Not only did he plead true to the two felony enhancements, he also had prior convictions for robbery, unauthorized use of a motor vehicle, theft by check, and methamphetamine and marijuana possession. Appellant committed the evading arrest offense while on probation; he had already failed to comply with his probation conditions at that point by drinking beer and having an open container in his vehicle.

Finally, regardless of the ambiguity in one part of the charge, it nevertheless contains the unambiguous statutory admonition that the jury was "not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant" in deciding on a sentence. And despite appellant's arguments to the contrary in his brief, the jury sentenced him to exactly what he asked for: a sentence in the lower end of the available range, only five years above the minimum.

Accordingly, our review of the record shows that appellant was not egregiously harmed by any error in the charge.

We overrule appellant's second point.

## Conclusion

Because we have overruled both of appellant's points, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 27, 2019

11