COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| SHAWN ANTHONY HARRISON, | § | No. 08-19-00025-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 372nd Criminal District Court |
| THE STATE OF TEXAS, | § | |
| | § | of Tarrant County, Texas |
| Appellee. | § | |
| | § | (TC# 1513591D) |

## **O P I N I O N**

After a jury trial, Appellant, Shawn Anthony Harrison, appeals the finding he used a deadly weapon while committing the offense of evading detention or arrest with a vehicle.[1]   We affirm.

## **BACKGROUND**

Appellant was indicted for a third-degree felony of evading arrest or detention with a vehicle.   The indictment was enhanced by a prior felony conviction and alleged the motor vehicle "in the manner of its use or intended use was capable of causing death or serious bodily injury." The deadly weapon was alleged to have been "used or exhibited" during the commission of the felony offense or in flight from the commission of the felony offense and the Appellant used or

---

[1] This case was transferred from the Fort Worth Court of Appeals, and we apply the precedent of that court to the extent required by TEX.R.APP.P. 41.3.

exhibited the deadly weapon.

In April 2016, some unknown person(s) broke into Latrisha Alexander's Arlington, Texas apartment, stealing three television sets among other items.[2]  After discovering her televisions were possibly being offered for sale on an online social media "app,"[3] she anonymously posed as a buyer negotiating with the online seller to buy her purported HiSense Television.[4]  After haggling a bit over the price for the television, the seller indicated it would be delivered to Alexander in a white Ford Crown Victoria at a Big Lots shopping center parking lot.  Once the web transaction was finalized, Alexander contacted the Arlington City Police Department, informing them about her scheduled meeting with the seller.

Officer Brian Winchester of the Arlington Police Department arranged for a "sting" operation.  Officers Brian Jones and Phil Williams drove to the Big Lots parking lot in an unmarked police car, to wait for the seller's arrival.  Detective Winchester, in his cruiser, was also monitoring the "stakeout" in the parking lot.

Appellant drove into the Big Lot's parking lot.  Appellant was driving a white Crown Victoria, which was identified as Appellant's by the license plate number, which matched the vehicle's registration and also the plate number of the car displayed on the app, where the seller had also offered the vehicle for sale.  Appellant was alone in the car.  Officer Winchester radioed uniformed Patrol Officers Charles Cisneros and Andrea Davis, who were nearby in marked police cars, to detain Appellant to investigate Alexander's burglary and recover her property.  Officer

---

[2]  Appellant was not indicted for the burglary or theft.

[3]  The app pictured three televisions, and Alexander specifically identified one of the televisions as hers, a HiSense brand LCD flat screen television, because of the distinctive serial number label she had placed on the back of it.

[4]  The seller also was anonymous, using the pseudonym "Izzy."

Winchester and Officers Cisneros and Davis approached Appellant's vehicle. As they were within two feet of Appellant, they directed him to place his hands outside the driver's window. At that distance, they were able to clearly observe his face. Appellant extended his hands as directed and made eye contact with Officers Cisneros and Davis. Then, Appellant quickly withdrew his hands, smoking his tires as he drove off at a high rate of speed.

As Appellant left the parking lot, he drove towards Interstate-20. The Arlington Police did not initiate a pursuit of Appellant because chasing vehicles can be dangerous, especially given the volume of traffic that day at 4:15 p.m. Sometime later, officers learned that Appellant's Crown Victoria had collided with a black SUV on Interstate-20 eastbound.[5] Both vehicles sustained heavy damage to the passenger side front and rear body panels, The record does not indicate what injuries the SUV driver sustained but an ambulance was called to the scene of the accident. Emergency Medical Services' (EMS) personnel treated the female driver. Webcam surveillance footage from, a school, Grace Preparatory Academy, adjacent to the highway, showed Appellant driving his vehicle off the highway, down an embankment, and then onto the school's football field.[6] The video showed Appellant driving his vehicle across an athletic field parking the vehicle behind the school next to a trash dumpster. When the officers arrived at the dumpster, Appellant was gone, but the Crown Victoria's trunk was open and the HiSense television was found in the dumpster. Crime scene technicians obtained latent fingerprints from the front of the television identifying them as Appellant's.[7]

---

[5] There is no evidence how the accident happened, just that it had occurred.

[6] Most of the students had been dismissed for the day, but some Academy administration staff remained.

[7] Evidence technicians did not process Appellant's Crown Victoria for fingerprints because Officer Winchester believed he needed a search warrant, which he did not have.

3

At trial, Officers Jones and Davis testified motor vehicles traveling recklessly can cause death or serious injury, are inherently dangerous, and can be deadly weapons when fleeing from police. Those officers and Officer Winchester positively identified Appellant as the driver of the white Crown Victoria and obtained a warrant for Appellant's arrest for evading arrest or detention with a vehicle.

## DISCUSSION

Appellant was convicted of evading arrest or detention with a vehicle. TEX.PENAL CODE ANN. § 38.04(b)(2)(A). He was sentenced to eight years' incarceration.[8] TEX.PENAL CODE ANN. § 12.42. Appellant's sole issue on appeal is the evidence was insufficient for the jury to find he had used the motor vehicle as a deadly weapon while committing the offense of felony evasion of detention or arrest.

## Standard of Review

We review claims of insufficiency of the evidence by viewing all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Jenkins v. State*, 493 S.W.3d 583, 597 (Tex.Crim.App. 2016)*; Wise v. State*, 364 S.W.3d 900, 903 (Tex.Crim.App. 2012). When the record supports conflicting inferences, a reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution" and defer to that determination. *Wise*, 364 S.W.3d at 903.

"Deadly weapon" means:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

---

[8] Appellant previously had been convicted of a felony.

4

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX.PENAL CODE ANN. § 1.07(a)(17).

Texas courts regularly uphold deadly weapons findings, involving motor vehicles. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex.Crim.App. 2009), *citing Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005). *See also Turner v. State*, No. 08-11-00318-CR, 2013 WL 5516447 (Tex.App.—El Paso Oct. 2, 2013, no pet.)(not designated for publication). Deciding the issue involves a two-part test: "[F]irst, we evaluate the manner in which the defendant used the motor vehicle during the felony; and second, we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra*, 250 S.W.3d at 255. Relevant factors for both parts include: speeding, driving erratically, turning abruptly into construction zones, driving on the wrong side of a highway, vehicle collisions, failing to maintain control of the vehicle, and the presence of other motorists at the same time and place as the defendant. *Id.* at 254-56; *Moore v. State*, 520 S.W.3d 906, 907-13 (Tex.Crim.App. 2017); and *Couthren v. State,* 571 S.W.3d 786, 793 (Tex.Crim.App. 2019).

Based on the evidence at trial, a rational fact finder could conclude that Appellant operated his vehicle dangerously and recklessly, and also infer that his driving could cause death or serious bodily injury. He sped off from the Big Lots parking lot, collided with a SUV, and drove down an embankment onto the athletic field of a school, where some administrative staff remained. *See Sierra*, 250 S.W.3d at 255-56 (failure to maintain control of a vehicle, and driving erratically on the wrong side of a highway), *citing Drichas*, 175 S.W.3d at 797*; Turner*, 2013 WL 5516447, at *4 (near collision with car headed in opposite direction); *Moore*, 520 S.W.3d at 907-08, 912-13

5

(collision).   The jury could also have found Appellant's collusion with the SUV was capable of causing death or serious bodily injury because of the significant body damage to both vehicles, the SUV driver was treated by EMS personnel, and Officers Jones' and Davis' testimony regarding motor vehicles traveling recklessly can cause death or serious injury when fleeing from police. *Thomas v. State*, No. 05-18-01204-CR, 2019 WL 6598616, *2 (Tex.App.—Dallas Dec. 4, 2019, no pet.)(mem. op., not designated for publication)(police officer testimony that a motor vehicle is capable of causing serious bodily injury or death).

Appellant, however, argues the totality of the State's evidence on the deadly weapon issue is meager:   Officer Winchester heard about a recent accident involving Appellant's car, and Appellant's vehicle had left the highway, ending up in a parking lot of the Grace Preparatory Academy.   Appellant notes Officer Winchester and his investigating team saw a black SUV with moderate damage, and a female being treated by EMS.   Appellant, however, ignores other evidence: a busy freeway on a Friday afternoon at about 4:15 p.m., and the dangerous and reckless nature of his driving out of the Big Lots parking lot to the freeway onto school property, with administrative staff present.   Additionally, the Arlington police officers testified how motor vehicles can cause death or serious injury, when fleeing from police.   While the jury could have agreed with Appellant, it did not, and we must view all the evidence in the light most favorable to the prosecution, presuming that the jury resolved any evidentiary issues and conflicts in favor of the prosecution.   *Jenkins*, 493 S.W.3d at 599; *Jackson*, 443 U.S. at 326; and *Wise*, 364 S.W.3d at 903.

Appellant cites several cases to support his argument the evidence was insufficient and too speculative for the jury to find that he used the motor vehicle as a deadly weapon.   Principally, he

6

relies on three: *Glover v. State*, No. 09-13-00084-CR, 2014 WL 1285134 (Tex.App.—Beaumont March 26, 2014, pet. ref'd)(mem. op., not designated for publication); *Foley v. State*, 327 S.W.3d 907 (Tex.App.—Corpus Christi 2010, pet. ref'd); and *Pointe v. State*, 371 S.W.3d 527 (Tex.App.—Beaumont 2012, no pet.). They are all distinguishable. In *Glover*, a Deputy stopped an intoxicated driver, who was driving a speeding pick-up truck with a female passenger. *Glover*, 2014 WL 1285134, at *1,*2. The only other evidence of a vehicular deadly weapon was that other, unspecified drivers were present during the commission of the offense. *Foley* involved an intoxicated driver, who crashed into an aluminum highway barrier. *Foley*, 327 S.W.3d at 916. The closest persons to the defendant at the time of the accident were 60 and 225 feet away in an office building, and there were no other motorists or persons at the scene of the accident. *Id.* at 917. Other than the defendant himself, no one was in danger of serious bodily harm or death. *Id*. In Appellant's case, he drove erratically, got into an accident with an SUV, resulting in significant damage to both vehicles, and requiring EMS personnel to treat the driver. We think that these distinctions in Appellant's case are substantial, and do not find *Glover* or *Foley* persuasive.

*Pointe* is a closer call. In *Pointe*, there was a two-vehicle collision, the police officer citing the other driver for causing the accident. *Pointe*, 371 S.W.3d at 530. A bystander corroborated the other driver being at fault. *Id.* at 530, 532. Additionally, the defendant had his ten-year-old son with him, and a hospital later diagnosed the defendant with a concussion. *Id*. While those facts somewhat resemble Appellant's case (an accident, medical treatment for one of the drivers, etc.), we also believe that *Pointe* too is distinguishable from Appellant's case because the investigating officer cited the other driver for a traffic violation, not the defendant, and the SUV driver in Appellant's case received medical care, not Appellant. Thus, we find *Pointe*

7

unpersuasive.

From this evidence in this record, a rational trier of fact could have found beyond a reasonable doubt that Appellant drove the motor vehicle in a reckless or dangerous manner capable of causing serious bodily injury or death to others. We overrule Appellant's sole issue.

**CONCLUSION**

For these reasons, we affirm.

April 30, 2020

YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

8