

| | | |
|---|---|---|
| GARY MCGEE, | § | No. 08-19-00125-CR |
| Appellant, | § | Appeal from the |
| v. | § | 394th District Court |
| THE STATE OF TEXAS, | § | of Hudspeth County, Texas |
| Appellee. | § | (TC# 6070) |
| | § | |

## **O P I N I O N**

After a jury trial, Appellant, Gary McGee, appeals his conviction of evading detention or arrest with a vehicle and the finding he used a deadly weapon while committing the offense. We affirm.

## **BACKGROUND**

### *Factual Background*

Around midnight, Ryan Glenn, a Texas Department of Public Safety Trooper, was patrolling I-10 in Hudspeth County. Trooper Glenn was parked on the right side of the road facing the westbound lane and observed a black four-door pickup traveling eastbound on the interstate appearing to be going over the speed limit. Trooper Glenn checked the speed from his radar and confirmed the vehicle's speed to be 90 mph—ten miles over the 80 mph speed limit. Trooper Glenn prepared to conduct a traffic stop and turned on his red and blue emergency lights while Appellant's vehicle was still traveling towards him. Trooper Glenn drove into the median to attempt to slow Appellant down, but Appellant drove pass and sped up. Trooper Glenn's patrol

unit camera recorded the incident which was admitted into evidence.

The recording corroborates Trooper Glenn's testimony. At time stamp 1:59 of the video, Trooper Glenn activated his blue and red emergency lights and drove onto the median of the highway. At 2:06, Appellant's vehicle passed by Trooper Glenn without stopping or slowing down. Trooper Glenn made a U-turn, pursued Appellant, and testified he again clocked Appellant's vehicle which reflected an increased speed of 96 mph. At 2:52 of the recording, Appellant activated the rear-facing lights of his vehicle. Trooper Glenn testified this act made it apparent to him that Appellant had no intention of pulling over. Around 3:45 of the recording, Appellant passed two semi-trailer trucks. Around the 5:30 time stamp, Appellant passed a third semi-trailer truck. At 6:12, Appellant passed a fourth and fifth semi-trailer truck. Trooper Glenn then called for a spike system—a mechanism in which officers place a strip of nail-like objects on the road and when a vehicle passes over it, the spikes deflate the tires. After Appellant drove over the spike system, Trooper Glenn observed Appellant continuing to evade, driving some distance afterwards. Around time stamp 7:23, Appellant exited the interstate and Trooper Glenn followed. At 7:43, Appellant finally pulled over to the side of the road and came to a complete stop. At 10:20, Appellant opened the driver-side door, exited the vehicle with his hands in the air, and slowly walked backwards toward Trooper Glenn's patrol unit until he was apprehended.

The pursuit of Appellant lasted approximately five minutes and thirty-seven seconds. Trooper Glenn testified he pursued Appellant at a speed of 115-117 mph. The last speed Trooper Glenn clocked Appellant with his radar was 96 mph; Trooper Glenn explained that although he stopped clocking Appellant's speed on radar during the pursuit due to safety reasons, however, he knew Appellant's speed was much greater, placing Appellant's highest speed at 110 mph.

### *Procedural Background*

Appellant was indicted for evading arrest or detention with a motor vehicle and abandoning or endangering a child with criminal negligence. Following a trial, the jury found him guilty of evading arrest or detention with a motor vehicle, but acquitted him for abandoning or endangering a child with criminal negligence. The trial court assessed a punishment of three years and six months' confinement in the Texas Department of Criminal Justice Institutional Division. This appeal followed.

## **DISCUSSION**

In three issues, Appellant contests the evidence was insufficient for the jury to (1) establish his identity as being the motorist of the vehicle the officer saw speeding, (2) establish the essential culpable mental state of knowing the officer was attempting to detain him, and (3) find he used the motor vehicle as a deadly weapon while committing the offense of felony evasion of detention or arrest. We disagree.

### *Standard of Review & Applicable Law*

We review claims of insufficiency of the evidence by viewing all the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex.Crim.App. 2016); *Wise v. State*, 364 S.W.3d 900, 903 (Tex.Crim.App. 2012). The fact finder judges the weight and credibility of evidence. *See* TEX.CODE CRIM.PROC.ANN. art. 38.04. Reviewing courts may not re-evaluate the weight and credibility of the evidence and may not substitute the fact finder's judgment for their own. *Williams v. State*, No. 02-19-00190-CR, 2020 WL 6326150, *2 (Tex.App.—Fort Worth Oct. 29, 2020, no pet.)(mem. op., not designated for publication)(*citing Queeman v. State*, 520 S.W.3d 616, 622 (Tex.Crim.App. 2017). Rather, "we determine whether the necessary inferences

are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict." *Williams*, 2020 WL 6326150, at *2; *see Villa v. State*, 514 S.W.3d 227, 232 (Tex.Crim.App. 2017). When the record supports conflicting inferences, a reviewing court must "'presume that the factfinder resolved the conflicts in favor of the prosecution'" and defer to that determination. *Wise*, 364 S.W.3d at 903.

**Issue One: Legal Sufficiency to Support Identity**

In Issue One, Appellant contests the sufficiency of the evidence to prove his identity as the speeding motorist. Appellant points to the passage of time between the vehicle that was initially followed for the speeding violation and the vehicle that was ultimately stopped, asserting the evidence failed to show the vehicle stopped by Trooper Glenn was the same vehicle he initially pursued. Appellant refers to a thirty second interval that "breaks the connection" to sufficiently prove his identity.

As the sole judge of the weight and credibility of the evidence concerning identity, here, the jury could have reasonably relied on the dashboard-camera video evidence that identified Appellant as the motorist who was evading arrest. Appellant argues, without directly identifying the specific intervals of time in the recording, Trooper Glenn's view was obstructed at several points and the driver was pursued from a considerable distance. However, upon close review of the video recording, those contentions are without merit. Although Appellant passed a total of five semi-trailer trucks and Trooper Glenn persisted at some distance behind, Appellant's vehicle remained visible throughout the pursuit. At trial, Appellant stated he saw Trooper Glenn's emergency lights when he passed him and admitted he "took too long to pull over." Moreover, the video recording shows after the stop, Appellant exited the driver side of the vehicle. When asked why he did not stop, Appellant responded, "I was trying to let you pass," and "that's why I kept

4

getting over so you could pass." Appellant also admitted, "I went ten miles over the speed limit" and testified at trial he was "determined not to slow down until I knew for sure that I was being pulled over." This video evidence was admitted at trial and played for the jury. The jury as the fact finder was entitled to review the evidence, determine the facts, assess the credibility of the witnesses, and weigh their testimony. *See Dowdy v.* State, No. 08-15-00061-CR, 2016 WL 5806412, *2 (Tex.App.—El Paso Oct. 5, 2016, pet. ref'd)(not designated for publication)(noting that as a reviewing court, we are not permitted to sit as "thirteenth juror" and substitute our judgment for that of the fact finder).

When viewed in the light most favorable to the verdict, the cumulative force of the evidence is sufficient to establish Appellant's identity as the motorist who evaded arrest. Issue One is overruled.

### Issue Two: Legal Sufficiency to Support Mental Culpable State

In Issue Two, Appellant contends that even if the proof is sufficient to show identity, the evidence is nonetheless insufficient to prove Appellant had the culpable mental state—that he was aware or knew Trooper Glenn was attempting to detain him.

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him and refuses to yield to that lawful show of authority. TEX.PENAL CODE ANN. § 38.04(a); *Perry v. State*, No. 02-19-00262-CR, 2020 WL 479590, at *4 (Tex.App.—Fort Worth Jan. 30, 2020, pet. ref'd)(mem. op., not designated for publication). The accused must know the person from whom he is fleeing is a peace officer attempting to arrest or detain him. *See Jackson v. State*, 718 S.W.2d 724, 725-26 (Tex.Crim.App. 1986). Unlawful fleeing is "anything less than prompt compliance with an officer's direction to stop[.]" [Internal quotation marks omitted]. *Lopez v. State*, 415 S.W.3d 495,

497 (Tex.App.—San Antonio 2013, no pet.)(*citing Horne v. State*, 228 S.W.3d 442, 446 (Tex.App.—Texarkana 2007, no pet.). A jury may infer knowledge from circumstantial evidence, such as the acts, words, and conduct of the defendant. *Reyes v. State*, 480 S.W.3d 70, 77 (Tex.App.—Fort Worth 2015, pet. ref'd). A reviewing court determines whether a jury's inferences are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 17 (Tex.Crim.App. 2007).

The record contains sufficient circumstantial evidence indicating Appellant's knowledge that Trooper Glenn was attempting to detain him throughout the pursuit. The video recording shows Trooper Glenn turned on his red and blue emergency lights at time stamp 1:59 and his emergency lights remained on throughout the entire pursuit. The video shows Trooper Glenn driving onto the median, at time stamp 2:06, Appellant's vehicle passed Trooper Glenn. After Trooper Glenn made a U-turn and pursued Appellant, Trooper Glenn testified Appellant increased his speed to 96 mph. At trial, Appellant testified he saw Trooper Glenn's emergency lights in his rear-view after he passed him. When asked whether Appellant knew Trooper Glenn was attempting to detain him, he responded, "I think a minute goes by and then the cops not making it clear what's going on, and I started to think that maybe it's me." Nearly one minute after the pursuit began, the recording shows Appellant activated the rear-facing lights of his vehicle, which were visibly brighter. Appellant also admitted at trial that he and his passenger, the mother of his child, discussed pulling over as they were aware Trooper Glenn was pursuing them, and Appellant admitted his passenger told him he should pull over. On cross-examination, Appellant was asked, "[y]ou never once thought I should pull over because there is emergency lights coming my direction? Isn't that what you are taught to do when you are doing driver's ed[?]" Appellant responded, "[y]es, sir."

Appellant drove at a high rate of speed, passed five semi-truck trailers, on a chase that exceeded five minutes and only stopped after his tires were blown out from the tire spike system. The five minutes and thirty-seven seconds pursuit by Trooper Glenn who attempted to stop Appellant reached speeds of 115-117 mph with his emergency lights activated. *See Lopez*, 415 S.W.3d at 497 (finding that the jury could have reasonably inferred that defendant knew officers were attempting to detain him when officer pursued the defendant with activated lights and sirens for about one and a half minutes). In *Lopez*, the defendant testified that he did not see the lights or hear the siren, and the court found that the jury, as the sole judge of the witnesses' credibility, could have disbelieved him. *Id*. In the instant case, Appellant admitted he saw the emergency lights, and his failure to promptly stop, his increased speed, the activation of his rear-facing lights, the length of the pursuit, stopping only after his tires were spiked, and his admissions at trial, provide more than sufficient evidence for a jury to conclude he was aware and intentionally evaded arrest.

Viewing all the combined and cumulative evidence in the light most favorable to the verdict, we hold that any rational fact finder could have found the element of knowledge and intent beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Queeman*, 520 S.W.3d at 622. Issue Two is overruled.

### Issue Three: Legal Sufficiency to Support Deadly Weapon Finding

In Issue Three, Appellant contends the evidence is legally insufficient to support the jury's deadly weapon finding.

'Deadly weapon' means:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or
(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX.PENAL CODE ANN. § 1.07(A)(17).

7

Texas courts consistently uphold deadly weapon findings, involving motor vehicles. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex.Crim.App. 2009)(*citing Drichas v. State,* 175 S.W.3d 795, 798 (Tex.Crim.App. 2005). *See also Turner v. State*, No. 08-11-00318-CR, 2013 WL 5516447 (Tex.App.—El Paso Oct. 2, 2013, no pet.)(not designated for publication). Deciding the issue involves a two-part test: "[F]irst, we evaluate the manner in which the defendant used the motor vehicle during the felony; and second, we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra*, 280 S.W.3d at 255. Relevant factors to the analysis include; speeding, driving erratically, turning abruptly into construction zones, driving on the wrong side of a highway, vehicle collisions, failing to maintain control of the vehicle, and the presence of other motorists at the same time and place as the defendant. *Id*. at 254-56; *Moore v. State*, 520 S.W.3d 906, 907-13 (Tex.Crim.App. 2017); and *Couthren v. State*, 571 S.W.3d 786, 793 (Tex.Crim.App. 2019).

Appellant argues the evidence supports only a hypothetical danger, but based on the evidence, we find a rational fact finder could have reasonably concluded Appellant operated his vehicle in a manner that was capable of causing death or serious bodily injury. In Appellant's vehicle was his infant child and the baby's mother. There were also other motorists on the road with Appellant as he passed five semi-trailer trucks while going at least 96 mph and up to 115 mph. Due to Appellant's actions, Trooper Glenn was forced to use a spike system to stop Appellant, which the State emphasizes, and we agree, could have caused a horrendous accident. Appellant himself testified at trial that the spiking of his tires endangered his infant child's life and admitted to "swerve[ing] a little bit" and to "almost los[ing] control of the vehicle." Even after Appellant drove over the spike system and his tires were blown, Trooper Glen testified Appellant continued to drive for some distance; s*ee Pointe v. State*, 371 S.W.3d 527, 532 (Tex.App.—Beaumont 2012,

no pet.)(finding the fact that the defendant had his ten-year old son with him was a relevant factor in reaching a deadly weapon finding).

From this evidence in this record, a rational trier of fact could have found beyond a reasonable doubt Appellant drove his motor vehicle in a reckless or dangerous manner that was capable of causing serious bodily injury or death to others. Issue Three is overruled.

## CERTIFICATION OF RIGHT TO APPEAL

We note that the trial court has certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature. The trial judge initialed and inserted the following "The court admonished the defendant of these rights on the record in open court after judgment was pronounced and sentence imposed. The defendant failed or refused to sign the certification, which is therefore being submitted without the signature of the defendant." *See* TEX.R.APP.P. 25.2(d).

Out of abundance of caution, the Court ORDERS Appellant's attorney, pursuant to TEX.R.APP.P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a *pro se* petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. The Court further ORDERS Appellant's attorney to comply with all the requirements of Rule 48.4.

## <u>CONCLUSION</u>

For these reasons, we affirm.


December 23, 2020
                                        YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

9